UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                         :

  KRYSTAL P. CHARLES,                :

                                     :

                        Plaintiff,      :     **MEMORANDUM DECISION AND**

                                     :     **ORDER**

           - against -              :

                                       :     25-cv-6219 (BMC)

  THE CITY OF NEW YORK,        :

                                       :

                        Defendant.     :

                                       :
------------------------------------------------------------ X

**COGAN**, District Judge.

      The Court previously held that plaintiff's original complaint failed to state ADA claims for disability discrimination (under either an adverse action or failure-to-accommodate theory) or retaliation.  The Court granted plaintiff's request for leave to amend and directed her to "identify, at minimum: the essential functions of her job; the date(s) on which she requested reasonable accommodations and what those accommodations were; and why those accommodations would have allowed her to perform the essential functions of her job."  Charles v. City of New York, No. 25-cv-6219, 2026 WL 698634, at *5 (E.D.N.Y. Mar. 12, 2026).  Plaintiff partially satisfied these requests.  Defendant's motion is therefore granted in part and denied in part as set forth below.

**SUMMARY OF AMENDED COMPLAINT**

      Plaintiff worked at DOC for twelve years before she was terminated.  She held various positions, including Assistant Deputy Warden and Correction Captain, and received satisfactory or better-than-satisfactory job performance ratings and reviews during her employment.  The essential functions of her job included, among other things:

supervising the work of the correction officers; monitoring the supervision of inmates; overseeing inmate movement; authorizing and directing inmate searches and search-related activities; supervising and evaluating the work performance of subordinates; [and] responding to reports of emergencies within the correctional facility.

In February 2021, plaintiff sustained significant injuries to her neck and spinal cord after an inmate threw toilet water in her face and caused her to abruptly wrench her neck. She also experienced emotional and psychological distress from the incident, resulting in her receiving a "Code 5" diagnosis (the amended complaint does not say what that means) from a psychiatrist/psychologist affiliated with DOC's Health Management Division. She subsequently requested sick leave (the amended complaint does not say for how long), which the Health Management Division approved. A month later, DOC demoted plaintiff from Assistant Deputy Warden to Captain. An unidentified amount of time after that, DOC demoted plaintiff to Officer.

Plaintiff says that she communicated several requests for reasonable accommodation while she was on sick leave in an effort to return to active employment, but that DOC ignored her requests. This statement appears to be only partially true, as plaintiff also says that she submitted a medical hardship request based on her physical injuries and emotional and psychological distress, and that the Health Management Division *did* approve it. As a result of that request, DOC placed plaintiff on medically-monitored, light/modified duty, which allowed her to work a limited and steady tour of duty, as opposed to the full, rotating and more varied duties otherwise required. Sometime after plaintiff received this accommodation to work on medically-monitored duty, plaintiff requested that she be able to continue on medically-monitored, light/modified duty. But DOC ignored plaintiff's requests and failed to engage in the interactive process.[1]

---

[1] It is exceptionally difficult to understand the timeline of events from plaintiff's amended complaint. When did plaintiff's sick leave – during which she was not working – start and end? When did plaintiff request medically-

On May 26, 2022, DOC proposed that plaintiff be terminated for excessive absenteeism, as she reported sick in excess of 200 days from March 20, 2021, through April 30, 2022; plaintiff maintains that she was out of work on "properly approved sick leave." (Plaintiff's allegations again generate much confusion, as not working for 200 days is a far cry from working on medically-modified duty.) On May 10, 2023, after an administrative hearing in February and March 2023, plaintiff was terminated. The New York City Civil Service Commission affirmed plaintiff's termination on appeal in July 2025. A few months later, plaintiff filed charges of employment-based discrimination with the New York State Division of Human Rights and the Equal Employment Opportunities Commission ("EEOC"). Plaintiff received a Right to Sue Notice from the EEOC in August 2025, and thereafter timely commenced the instant action.

## DISCUSSION

### I.      Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[.]" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). When deciding a motion to dismiss, the Court must "constru[e] the complaint liberally, accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Elias v. Rolling Stone LLC, 872 F.3d 97, 104 (2d Cir. 2017) (quoting Chase Grp. All. LLC v. City of N.Y. Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010)).

---

modified duty? When did plaintiff's medically-modified duty start and end? The Court cannot yet say whether plaintiff is hiding the ball, but it sure seems that way.

3

## II.    __Disability Discrimination__

Plaintiff brings claims of disability discrimination under adverse action and failure-to-accommodate theories.  See Kirkland-Hudson v. Mount Vernon City Sch. Dist., 665 F. Supp. 3d 412, 457 (S.D.N.Y. 2023) (citing McMillan v. City of New York, 711 F.3d 120, 125-26 (2d Cir. 2013)).

To state an adverse action claim, plaintiff must plead that: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of [her] disability or perceived disability."  See Richards v. Dep't of Educ. of City of New York, No. 21-cv-338, 2022 WL 329226, at *13 (S.D.N.Y. Feb. 2, 2022) (quoting Kinneary v. City of New York, 601 F.3d 151, 156 (2d Cir. 2010)).  To state a failure-to-accommodate claim, plaintiff must plead that: "(1) [she is a person] with a disability under the meaning of the statute ... ; (2) an employer covered by the statute had notice of the disability; (3) with reasonable accommodation, [she] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  Gahfi v. New York City Dep't of Educ., No. 23-cv-1782, 2025 WL 675933, at *11 (E.D.N.Y. Feb. 28, 2025) (citation omitted).

With respect to the adverse action claim, even though plaintiff now identifies what she believes were the essential functions of her job, she still fails to "indicate how an accommodation would enable her to perform those essential functions."  Charles, 2026 WL 698634, at *2. Plaintiff's has a new attorney who has tried to remedy this omission, arguing for the first time in plaintiff's opposition brief that working light/modified duty – a fixed schedule – "would have

allowed her to manage her disabilities by allowing her to attend medical appointments without having to take time off from work." Although a plaintiff is generally "not permitted to interpose new factual allegations or a new legal theory in opposing a motion to dismiss," see Uddoh v. United Healthcare, 254 F. Supp. 3d 424, 429 (E.D.N.Y. 2017) (collecting cases), the Court is going to deem the allegation an effective amendment since plaintiff's last attorney missed the mark. With that allegation, plaintiff has satisfied all the elements necessary to sustain her adverse action claim at this stage: in sum, that she was qualified to perform the essential functions of the job with the accommodation of medically-modified duty, and that she was demoted and later terminated because of her disability. Given that "the standard for pleading a disability discrimination claim under the NYSHRL and NYCHRL is more lenient than the ADA standard," Weekes v. JetBlue Airways Corp., No. 21-cv-1965, 2022 WL 4291371, at *8 (E.D.N.Y. Sept. 16, 2022) (citing Jones v. New York City Transit Auth., 838 F. App'x 642, 644 n.1 (2d Cir. 2021)), plaintiff's adverse action claim is also sufficiently alleged under the NYSHRL and NYCHRL.

The failure-to-accommodate claim is another story. Plaintiff received her requested accommodation in the first instance by being allowed to go on medically-modified duty. The amended complaint implies that the accommodation ended but doesn't say when. But plaintiff's opposition brief answers that question: "she was denied this accommodation by the DOC's decision to end her accommodation when it terminated her for pretextual reasons." That's a vague way of saying that plaintiff's accommodation ended when her employment ended. This is just a reframing of plaintiff's adverse action claim, and not a failure-to-accommodate claim. After all, there's no reason why DOC would have, could have, or should have provided an

5

accommodation to someone who no longer worked there.  Thus, plaintiff's failure-to-accommodate claim fails under the ADA, NYSHRL, and NYCHRL.

### III.   Retaliation

"To state a [retaliation] claim under the ADA, ... a plaintiff must allege that [she] engaged in protected activity of which [her] employer was aware, that the employer took adverse action against [her], and that the two were causally linked." Deering v. City of New York, No. 21-cv-3601, 2023 WL 3997261, at *6 (E.D.N.Y. June 14, 2023).  "A causal link requires (1) direct proof of retaliatory animus directed against the plaintiff; (2) disparate treatment of similarly situated employees; or (3) that the retaliatory action occurred close in time to the protected activities." Id. (internal quotation marks and citation omitted).  Like the original complaint, the amended complaint offers no allegations of retaliatory animus or disparate treatment, which leaves temporal proximity as plaintiff's only avenue for pleading causation.

The Court previously found that the original complaint failed to state a claim for retaliation because it did not say when plaintiff made her requests for reasonable accommodation (i.e., her protected activity), thus failing on the causation prong.  The amended complaint suffers from that same deficiency.  Plaintiff argues in her opposition brief that it was "implied" that she made her first request for reasonable accommodation in February 2021, a month before she was demoted, and requests leave to file a second amended complaint to say that expressly.  It was not implied.  Rather, the implication from the vague original complaint and nearly-as-vague amended complaint is that plaintiff went on sick leave and later requested an accommodation to enable her to return to work.  Alas, construing the pleading in the light most favorable to plaintiff, the Court will accept the amendment.  As a result, plaintiff sufficiently alleges a retaliation claim, under the ADA and the more lenient NYCHRL, based on her demotions after

6

making an accommodation request.  However, plaintiff fails to allege a retaliation claim under the NYSHRL because unlike the ADA and NYCHRL, the NYSHRL "does not recognize requests for reasonable accommodation as protected activity."  See Kim v. Regeneron Pharms., Inc., No. 24-cv-05234, 2026 WL 820603, at *11 (S.D.N.Y. Mar. 25, 2026).[2]

Plaintiff also does not sufficiently allege a retaliation claim based on her termination, and the Court will not grant plaintiff leave to amend on this basis.  The purported February 2021 accommodation request happened over a year before plaintiff's termination was even proposed. See Natofsky v. City of New York, 921 F.3d 337, 353 (2d Cir. 2019) (concluding that a period of "almost a year" between plaintiff's protected activity and the adverse employment action was too long to support the inference of causation).  And contrary to the Court's directives, the amended complaint does not identify when plaintiff made any other accommodation requests, and so "it is impossible to assess the temporal proximity between [those] requests and her termination." Charles, 2026 WL 698634, at *4.

## CONCLUSION

Defendant's motion to dismiss is granted in part and denied in part as set forth above.

**SO ORDERED.**



U.S.D.J.

Dated: Brooklyn, New York
         May 7, 2026

---

[2] "The NYSHRL was amended, effective December 5, 2025, to recognize requests for reasonable accommodations as protected activity for the purposes of retaliation claims."  Kim, 2026 WL 820603, at *11 n.9.  Plaintiff's claim must be evaluated under the pre-amendment NYSHRL because she filed suit before the effective date.  Id.